## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Crim. No. **PJM 01-284-4** |
| | * | |
| **DEREK LAVELLE STATEN,** | * | |
| | * | |
| Defendant. | * | |

### <u>MEMORANDUM OPINION</u>

Derek Staten has filed a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act, seeking his immediate release from Bureau of Prisons custody at Forrest City Low FCI in Arkansas. ECF No. 312. The Government has responded in opposition, ECF No. 316, and Staten has replied, ECF No. 319. For the reasons that follow, Staten's Motion is **DENIED**.

### I.

On May 2, 2002, a jury found Staten guilty of two drug trafficking crimes: conspiring to distribute and possessing with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base – commonly referred to as crack – and one hundred kilograms or more of marijuana in violation of 21 U.S.C. § 846 (Count 1) and possessing with intent to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 2). *See* ECF No. 144.

He was one of five individuals charged in connection with a conspiracy through which large quantities of drugs were procured in Los Angeles, California, transported to Maryland, and prepared here for resale to distributors and users. *See* ECF No. 50; ECF No. 270 (Presentence Investigation Report ("PSR")) ¶ 11. Staten, who lived in Los Angeles, was integral to this

arrangement. He acquired the drugs from various sources and sold them to his codefendant Harry White, Jr., first in single kilogram quantities, then in amounts of two to four kilograms, and on at least a few occasions, ten kilograms per transaction. PSR ¶ 12. Trial testimony, ledgers, and wiretaps confirmed that White (and others) made numerous trips between Los Angeles and Maryland to negotiate, purchase, and transport the narcotics. *Id.* ¶¶ 12-13. A search of Staten's Los Angeles residence, described as a "clubhouse," uncovered $77,000 in money transfers, a loaded 9mm firearm, and an extended clip for TEC-9 semi-automatic pistol. *Id.* at ¶¶ 14-15. Intercepted phone calls revealed Staten's intention to broker the sale of a TEC-9 and a "Tommy Gun," a type of submachine gun. *Id.* at 14.

In advance of sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") that calculated Staten's offense level, criminal history score, and recommended guidelines range. *See* ECF No. 270 (PSR). Based on the quantity of drugs involved and because law enforcement recovered a firearm from his residence, the PSR calculated Staten's offense level at 38. *Id.* ¶ 31. The Probation Office deemed Staten a career offender and calculated his criminal history score as V due to prior state convictions for robbery, infliction of corporal injury on his spouse, and possession of a firearm by a felon. *Id.* ¶¶ 32-55.[1] At the time, Staten faced a mandatory guideline range of 360 months to life imprisonment. *Id.* ¶ 65.

On July 30, 2002, the Court sentenced Staten to 360 months imprisonment on each of the two counts, to be served concurrently, and a total of 10 years supervised release. ECF No. 144. The thirty-year term of incarceration was the lowest possible at the time. *See* PSR ¶ 65.

---

[1] Based upon his prior convictions alone, the PSR found Staten to have seven criminal history points. But, because he committed the instant offense within two years of his release from prison and while on parole, three criminal history points were added pursuant to U.S.S.G. §§ 4A1.1(d) and (e). *See* PSR ¶¶ 52-54.

On February 28, 2017, the Court reduced Staten's sentence to 292 months imprisonment pursuant to Amendment 782, which retroactively adjusted downward the offense level for certain drug offenses. ECF No. 295.

Staten now seeks a reduction of his sentence to time-served, the equivalent of a reduction of his sentence to approximately 262 months imprisonment.

## II.

Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"), to reduce the inequality in mandatory minimum sentences between drug trafficking offenses involving crack cocaine and powder cocaine. *See United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. Mar. 23, 2020). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), made those changes retroactive. *Id.* It permits courts, "on motion of the defendant... [to] impose a reduced sentence" for a criminal defendant (1) who was convicted of a "covered offense," *i.e.*, a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [FSA]"; (2) if the offense was committed before August 3, 2010; and (3) if the defendant did not already receive a reduction under the FSA or the First Step Act. *United States v. Robinson*, Cr. No. PJM-02-0227, 2019 WL 3867042 *2 (D. Md. Aug. 15, 2019).

There is no question that Staten committed the trafficking offenses for which he was found guilty before August 3, 2010 or that he has already received a reduction under the FSA or the First Step Act. Whether his are "covered offenses" is the threshold question. *See Gravatt*, 953 F.3d at 260.

3

Staten trafficked in both powder cocaine and crack cocaine; indeed, in far greater amounts of powder than crack form.[2] This, the Fourth Circuit recently made clear, is no bar to eligibility. *See United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020). If Staten had been convicted of only trafficking crack in Count 1, he would certainly be eligible for relief. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act"). But, because Congress did not intend to exclude defendants who committed acts involving both forms of the drug from benefitting from the remedial goals of the First Step Act, *see Gravatt*, 953 F.3d at 264, the Fourth Circuit has "held that a defendant convicted of conspiracy to possess with intent to distribute crack cocaine and powder cocaine was convicted of a covered offense." *United States v. Byers*, 801 Fed.Appx. 134, 135 (Mem) (4th Cir. 2020) (*citing Gravatt*, 953 F.3d at 263-64).[3] As such, Staten is eligible for relief under the First Step Act.

Eligibility, of course, is not an automatic ticket to a sentence reduction. Rather, it entitles a defendant to a substantive review of his motion on the merits. *See Gravatt*, 953 F.3d at 262. Having found Staten eligible, the Court turns to the merits of his petition.

## III.

In determining whether the Court, acting in its discretion under Sections 404(b) and 404(c) of the First Step Act, should reduce Staten's sentence, the factors set forth in 18 U.S.C. § 3553(a) must be considered. *See Wirsing*, 943 F.3d at 183; *United States v. Logan*, Cr. No. CCB-10-0203,

---

[2] Count 1 alleges more than fifty *kilograms* of cocaine and more than fifty *grams* of cocaine base. Count 2 alleges five hundred grams or more of cocaine. *See* ECF No. 144.

[3] Staten's eligibility is potentially complicated because Count 2, as to which he was sentenced to a term of imprisonment concurrent with Count 1, involves only cocaine (not crack). *See* ECF No. 144. The Government appears to believe that, because Count 1 and Count 2 were grouped for the purposes of sentencing, *see* PSR ¶ 65, any granted reduction would apply to both counts. *See* ECF No. 318, p. 7, n. 4; *see also United States v. Smith*, No. DKC-98-0252, 2020 WL 758525 * 1 (D. Md. Feb. 14, 2020). Staten appears to agree with this. *See* ECF No. 319.

4

2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors include (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need for the sentence imposed;" and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also take into account Staten's post-conviction behavior. *See Logan* at *1; *Robinson* at *5.

The Government submits that the Court should deny Staten relief based on the seriousness of his crime as well as his prolonged history of criminal activity. *See* 18 U.S.C. § 3553(a)(1). It emphasizes the large quantity of drugs – 75 kilograms of cocaine and 100 kilograms of marijuana – for which Staten was responsible. *See* PSR ¶ 23. The Government in particular asks the Court to consider the connection between large-scale drug trafficking and violent crime. Given their inherent relationship, the Government argues, as well as the fact that a loaded semi-automatic handgun was found at Staten's residence and that wiretap evidence established his intent to broker additional high-powered weapons, Staten's offense should be considered violent in nature. *See* ECF No. 318, p. 9. It also urges the Court to give weight to Staten's prior convictions. *See* 18 U.S.C. § 3553(a)(1). The Government characterizes Staten's reliance on crime as his livelihood, suggesting that previous periods of incarceration have in no way deterred his criminal conduct. *See* ECF No. 318, p. 9. Staten's current sentence of 292 months, says the Government, reflects the seriousness of the offense, adequately deters future illegal conduct, and sufficiently protects the public from further crimes by Staten. *See* 18 U.S.C. § 3553(a)(2).

Staten concedes that his offenses were "indisputably serious" and that his past is "not pristine." ECF No. 319, p. 2. He asks the Court to focus instead on his post-sentence behavior and to consider his likely punishment were he to be sentenced today. While in prison, Staten has earned

his GED, volunteered with at-risk youth, and has become a certified welder. *See* ECF Nos. 312-1, 312-2, 312-3. He has had few disciplinary citations, the most recent occurred in 2010. As a result, for the past eight years, the Bureau of Prisons ("BOP") has housed him in a low security prison, FCI Forrest City Low in Arkansas. *See* ECF No. 312-4.

Concerning the need to avoid sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), Staten makes much of his argument that, if sentenced today, he would be subject to an advisory guideline range of 262 to 327 months. ECF No. 312, p. 13. His request for a time-served disposition, he explains, equates to a 262-month sentence, at the low end of that range. *Id*. Despite his admission of serious misconduct, he nonetheless asserts that there is "no reason" that a sentence above the low-end of the guideline range is warranted. ECF No. 319, p. 2. The Court disagrees.

For starters, the quantity of drugs attributable to Staten is astonishing, especially given the relatively short duration of the conspiracy.[4] *See* PSR ¶ 23. His role in the trafficking scheme cannot be understated: he procured the drugs from multiple sources in Los Angeles and orchestrated their sale in several-kilogram amounts to his codefendants, who transported them to Maryland where they were cooked and distributed. *Id.* ¶¶ 11-12. Without question, the conspiracy would not have functioned without him.

Staten's propensity for crime involving firearms is also troubling. Not only did wiretap evidence expose his efforts to broker the sale of a TEC-9 and a Tommy Gun; at least two of his prior state convictions involved a firearm.[5] There is also little doubt that large-scale drug trafficking is often linked to violent crime. *See United States v. Blackwell*, Cr. No. JKB-10-0493, 2020 WL 833571 * 2 (D. Md. Feb. 19, 2020). In other words, the loaded 9mm handgun law

---

[4] The conspiracy began in approximately January 2000 and continued through May 2001. *See* PSR ¶ 9.
[5] According to the PSR, Staten's conviction for robbery concerned the theft of a car at gunpoint, *see* PSR ¶ 36, and his conviction for being a felon in possession of a firearm pertained to a loaded semi-automatic pistol, *see* PSR ¶ 47.

enforcement found in his "clubhouse" when searched hardly appears to have been a one-off transaction.

The Court is additionally concerned over Staten's history of committing criminal acts while on parole (he committed the instant offense while on parole for Possession of a Firearm by a Felon). *See* PSR ¶ 53. Although his recent record in custody may suggest that Staten has seen the error of his ways, it does not fully assuage the Court's concern that he continues to pose a threat to the safety of the community.

Staten's present term of incarceration is already below the midpoint of what Staten submits would be the guideline range for imprisonment (262 to 327 months) if he were to be sentenced today.[6] Contrary to Staten's assertion, his crucial role in what was a large-scale, cross-country drug trafficking *does* warrant at least a mid-range sentence. His conduct involved far greater quantities of drugs than those attributed to petitioners for whom the Court has recently granted First Step Act motions for reduced sentences. *See United States v. Watts*, Cr. No. PJM 06-036-1, 2020 WL 586811 (D. Md. Feb. 6, 2020); *United States v. Mack*, Cr. No. PJM 09-247, 2019 WL 7037961, (D. Md. Dec. 20, 2019); *United States v. Robinson*, Cr. No. PJM-02-277, 2019 WL 3867042 (D. Md. Aug. 15, 2019).[7]

## IV.

In addition to the factors the Court considers in a § 3553(a) analysis, Staten urges the Court to also consider the emergent danger COVID-19 poses to his health and well-being. At the time of the filing of Staten's Motion, there was a significant outbreak of the disease at FCI Forrest City

---

[6] The Government does not directly dispute Staten's characterization of the applicable guideline range if he were to be sentenced today. *See* ECF No. 318.

[7] Taken alone, a petitioner's culpability in trafficking large quantities of drugs does not, of course, foreclose the potential of a sentence reduction pursuant to Section 404 of the First Step Act. As far as Staten is concerned, however, the combination of the significant quantity of drugs and his integral role in the conspiracy factors heavily on the Court's decision.

Low, where Staten is housed. In later submissions, Staten has informed the Court that the outbreak

has worsened, with over 250 people infected at last count. *See* ECF No. 322. Moreover, as of May

20, 2020, Staten has reported that he himself has contracted coronavirus. *Id.* Although he reports

no symptoms at this time, *id.*, he has informed the Court that he suffers from various pre-existing

conditions, including severe obesity rendering him at a higher risk for a poor prognosis, *see* ECF

Nos. 319, 322-2. He describes himself being temporarily housed with other asymptomatic inmates

in a makeshift quarantine facility with cramped conditions and limited showers. *Id.*

While the presence of COVID-19 in the BOP certainly merits consideration in evaluating

the merits of the instant motion, it is to be clear, not itself dispositive in determining whether to

grant a reduced sentence. *See, e.g., United States v. Dennis,* Cr. No. RDB-08-0012 (D. Md. May

1, 2020) (acknowledging COVID-19 as one relevant factor in evaluating a motion for a reduced

sentence pursuant to Section 404 of the First Step Act); *United States v. Proctor*, Cr. No. DKC 04-

160, 2020 WL 1864584 (D. Md. Apr. 14, 2020) ("The current pandemic state of emergency is of

great concern to the entire country… Immediate release, however, is not a panacea..."); *see also*

*United States v. Seymon*, Cr. No. JES-11-10040, 2020 WL 2468762 * 4 (C.D. Ill. May 13, 2020)

(denying compassionate release for FCI Forrest City Low prisoner with preexisting conditions,

explaining that "the mere presence of COVID-19 in a particular prison cannot justify

compassionate release - if it could, every inmate in that prison could obtain release"). While the

makeshift quarantine within the prison, as described by Staten, may be less than ideal, as Judge

Hollander recently noted, the BOP is generally taking steps to mitigate the danger of COVID-19

within its facilities and to adequately care for its infected inmates. *See United States v. Hiller*, Cr.

No. ELH-18-389, 2020 WL 2041673 * 3-4 (D. Md. Apr. 28, 2020). Particularly given that Staten

is not experiencing negative symptoms associated with the coronavirus, there is no indication that

he would not receive appropriate medical care at FCI Forrest City Low if such care becomes necessary.[8]

### V.

In conclusion, Staten has displayed positive post-sentence conduct and the dramatic spread of COVID-19 within FCI Forrest City Low that has resulted in Staten himself becoming infected is concerning. But Staten's role in the underlying offenses, including trafficking in extremely large quantities of drugs, and an unbroken history of criminal activity, has led the Court to conclude his current sentence of 292 months is appropriate to accomplish the objectives of sentencing set forth in 18 U.S.C. § 3553(a). Accordingly, Staten's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act is **DENIED**.

A separate Order will **ISSUE**.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 5, 2020**

---

[8] The Government contends that Staten's current health concerns are more properly considered on a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits sentence modification for "extraordinary and compelling reasons." *See* ECF No. 323. The Court is inclined to agree. Notably, a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) requires that Staten to first exhaust his administrative remedies. *See United States v. Decator*, --- F.Supp.3d ----, 2020 WL 1676219 * 1 (D. Md. Apr. 6, 2020). It appears that Staten may have already submitted a request to the warden of FCI Forrest City Low and the thirty-day clock for administrative action will soon run. *See* ECF No. 324-1.